## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| PATRICIA JONES,<br><br>    Plaintiff,<br><br>Vs.<br><br>C.R. BARD, INC., a foreign corporation, and BARD PERIPHERAL VASCULAR, INC., an Arizona corporiation | Case No.<br><br>**COMPLAINT FOR DAMAGES** |

## <u>INTRODUCTORY ALLEGATIONS</u>

Plaintiff brings this action for personal injuries suffered by an injured party as a direct and proximate result of an injured party being implanted with a defective and unreasonably dangerous Inferior Vena Cava ("IVC") filter medical device manufactured by Bard.

The subject IVC filters are part of Bard's IVC "retrievable" filter product line and include the following devices: Recovery®, G2®, G2®X (G2 Express®), Eclipse®, Meridian® and Denali® (for convenience, these devices will be referred to in this complaint under the generic term "Bard IVC Filters"). The term "Bard IVC Filters" also includes Bard's Recovery® Cone Removal System®.

Plaintiffs' claims for damages all relate to Bard's design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of Bard IVC Filters.

The Bard IVC Filters that are the subject of this action all reached Plaintiff and her physicians without substantial change in condition from the time they left Bard's possession.

Plaintiff and her physicians used the Bard IVC Filters in the manner in which they were intended.

Bard is solely responsible for any alleged design, manufacture or informational defect Bard IVC Filters contain.

Bard does not allege that any other person or entity is comparatively at fault for any alleged design, manufacture, or informational defect Bard IVC Filters contain.

## PARTIES

Plaintiff is the person and that has brought or will bring actions seeking personal injury damages caused by Bard IVC Filters.

Plaintiff is the person injured and harmed by Bard IVC Filters.

Plaintiff, PATRICIA JONES, at all times relevant to this action was and is a citizen of Georgia and resides in Clayton County, Georgia.  On or about January 31, 2007, Plaintiff underwent placement of a Bard G2® Inferior Vena Cava Filter ("G2® IVC Filter").  The filter has failed to include the following:  chest pain, migration of a strut into the right ventricle of the heart, perforation of the strut through the wall of the right ventricle of the heart, henopericardium and open vascular/sternotomy for removal of the strut.

As a direct and proximate result of having a Bard G2® IVC Filter implanted, Plaintiff has suffered permanent and continuous injuries and damages.  The injuries suffered and damages sought by Plaintiff (hereafter, "Injuries and Damages") may include, without

limitation: pain and suffering; bodily injuries of any type (including, without limitation, perforation of organs and venous structures, thromboembolic events, and cardiovascular injuries); disability; impairment; scarring; disfigurement; dismemberment; physical; emotional and psychological trauma; anxiety; diminished capacity; loss of consortium; hedonic damages; past medical expenses; future medical expenses; caregiving costs; lost wages; loss of earning capacity; and any other form of damages under the law of any forum which governs any individual case.

Defendant C.R. Bard, Inc. ("C.R. Bard") is a corporation duly organized and existing under the laws of the state of Delaware and has its principal place of business in New Jersey. Bard, at all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Recovery®, G2®, G2®X (G2 Express®), Eclipse®, Meridian®, and Denali® Filter Systems to be implanted in patients throughout the United States including the State of Arizona and Plaintiffs' states of residence and/or injury.

Defendant Bard Peripheral Vascular, Inc. ("BPV") is a wholly-owned subsidiary corporation of Defendant C.R. Bard, with its principal place of business at 1625 West Third Street, Tempe, Arizona.  BPV, at all times relevant to this action, designed, set specifications for, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Recovery®, G2®, G2®X(G2 Express®), Eclipse®, Meridian®, and Denali® Filter Systems to be implanted in patients throughout the United States, including the State of Arizona and Plaintiffs' states of residence and/or injury.

There exists, and at all relevant times existed, a unity of interest in ownership between certain defendants and other defendants such that any individuality and separateness between the certain defendants has ceased and those defendants are the alter ego of the other certain defendants, and exerted control over those defendants.

Adherence to the fiction of the separate existence of these certain defendants as any entity distinct from other certain defendants would permit an abuse of the corporate privilege, sanction fraud, and promote injustice.

Plaintiff  is informed and believes, and thereon allege, that at all times herein mentioned each of the Defendants were the agent, servant, employee, and/or joint venturer of the other co-defendants, and at all said times each Defendant was acting in the full course, scope, and authority of said agency, service, employment, and/or joint venture.

"Bard" or "Defendants" includes any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind; their predecessors, successors, and assigns; their officers, directors, employees, agents, representatives; and any and all other persons acting on their behalf.

At all times relevant, Bard was engaged in the business of researching, designing, testing, developing, manufacturing, packaging, labeling, marketing, advertising, distributing, promoting, warranting, and selling in interstate commerce Bard IVC Filters, either directly or indirectly through third parties or related entities.

Bard develops, manufactures, sells, and distributes medical devices and surgical products throughout the United States and around the world, including Bard IVC Filters for use in various medical applications including endovascular cardiology.

Upon information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States, including in the State of Arizona and in the states and territories identified in each Short Form Complaint, and said Defendants derived and continue to derive substantial revenue therefrom.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states, the amount in controversy for each action exceeds seventy-five thousand dollars ($75,000.00) excluding interest and costs, and there is complete diversity of citizenship between each Plaintiff and Defendant.

This Court has personal jurisdiction under 28 U.S.C. § 1391, as BPV is domiciled in this District and all Defendants regularly conduct business in this State.  Further, Defendants are present and doing business within this State and have continuous and systematic contacts in every state in the United States of America, including each Plaintiffs' states of residence.

Pursuant to the Transfer Order filed on August 17, 2015, it was determined:

> [T]he actions in this litigation involve common questions of fact, and that centralization in the District of Arizona will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  All actions involve common factual questions arising from allegations that defects in the design of Bard's retrievable inferior vena cava filters ("IVC filters") make them more likely to fracture, migrate, tilt, or perforate the inferior vena cava, causing injury.  Centralization will eliminate duplicative discovery, avoid

inconsistent pretrial rulings (including with respect to discovery, privilege, and *Daubert* motion practice), and conserve the resources of the parties, their counsel and the judiciary.

Pursuant to the Transfer Order filed on August 17, 2015, cases are being transferred to The Honorable David G. Campbell in the United States District Court for the District of Arizona, Phoenix Division, as part of the IN RE: BARD IVC FILTERS PRODUCTS LIABILITY LITIGATION MDL 2641.

Pursuant to Case Management Order No. 2, federal cases against Bard relating to Bard IVC Filters may be directly filed in this District.

## BACKGROUND

## INFERIOR VENA CAVA FILTERS GENERALLY

IVC filters were first made commercially available to the medical community in the 1960s. Over the years, medical device manufacturers have introduced several different designs of IVC filters.

An IVC filter is a device that is designed to filter or "catch" blood clots that travel from the lower portions of the body to the heart and lungs. IVC filters were originally designed to be permanently implanted in the IVC.

The IVC is a vein that returns blood to the heart from the lower portions of the body. In certain people, for various reasons, blood clots travel from the vessels in the legs and pelvis, through the vena cava and into the lungs. Oftentimes, these blood clots develop in the deep leg veins, a condition called "deep vein thrombosis" or "DVT." Once blood clots reach the

lungs, they are considered "pulmonary emboli" or "PE."  Pulmonary emboli present risks to human health.

People at risk for DVT/PE can undergo medical treatment to manage the risk.  For example, a doctor may prescribe anticoagulant therapies such as medications like Heparin, Warfarin, or Lovenox to regulate the clotting factor of the blood.  In some people who are at high risk for DVT/PE and who cannot manage their conditions with medications, physicians may recommend surgically implanting an IVC filter to prevent thromboembolitic events.

As stated above, IVC filters have been on the market for decades and were permanent implants.  However, use of these filters was limited primarily to patients who were contraindicated for anticoagulation therapy.

In order to increase sales of these devices, Bard sought to expand the market for prophylactic use among nontraditional patient populations that were temporarily at risk of developing blood clots.

Specifically, Bard targeted the bariatric, trauma, orthopedic and cancer patient population.  Expansion to these new patient groups would triple sales and the first manufacturer to market would capture market share.

At the same time, Bard was aware that physicians developed interest in filter devices that could be easily removed after the risk of clotting in these new patient populations subsided.  This too was an opportunity to gain market share in the lucrative IVC filter market.

Other manufacturers also saw this opportunity, triggering a race to market a device that provided physicians the option to retrieve the filter after the clot risk subsided.

Bard was the first medical device manufacturer to obtain FDA clearance for marketing a "retrievable" IVC filter (the Bard Recovery® filter) in July 2003.

This "clearance" was obtained despite lack of adequate testimony on the safety and efficacy of the new line of devices.

As shown below, Bard's retrievable IVC filters have been plagued with problems – all created by Bard itself – most notably, the absence of any evidence that the products were effective in preventing pulmonary embolism (the very condition the product was indicated to prevent).

Years after the implantation of retrievable filters into the bodies of patients, scientists began to study the effectiveness of the retrievable filters – studies that Bard itself had never done before placing the product on the market.  As recently as October 2015, an expansive article published in the *Annals of Surgery* concerning trauma patients inserted with IVC filters concluded that IVC filters were not effective in preventing pulmonary emboli, and instead actually caused thrombi to occur.

Comparing the results of over 30,000 trauma patients who had not received IVC filters with those who had received them, the *Annals of Surgery* study published its alarming results:

- Almost twice the percentage of patients with IVC filters in the study died compared to those that had not received them.

- Over five times the relative number of patients with IVC filters developed DVTs.

- Over four times the relative percentage of patients with filters developed thromboemboli.

- Over twice the percentage of patients developed a pulmonary embolus – the very condition Bard told the FDA, physicians, and the public that its IVC Filters were designed to prevent.

This *Annals of Surgery* study – and many others referenced by it – now shows without any question that IVC filters are not only utterly ineffective but that they are themselves a health hazard.

<u>**THE G2®, RECOVERY® G2 AND G2® EXPRESS FILTERS**</u>

On or about March 2, 2005, Bard submitted a Section 510(k) premarket notification of intent to market the G2® filter for the prevention of recurrent pulmonary embolism via placement in the inferior vena cava.  In doing so, Bard cited the Recovery® filter as the substantially equivalent predicate IVC filter, which was an inappropriate and illegal predicate device since it was being marketed while adulterated and misbranded for failing, among other things, to be as safe and effective as its predicate device, SNF.  Bard stated that the only differences between the Recovery® filter and the G2® filter were primarily dimensional, and no material changes or additional components were added.  It was considered by Bard the next generation of the Recovery® filter

On March 30, 2005, however, the FDA rejected this application unless Bard and BPV included "black box" warnings that read:

Warning:   The safety and effectiveness of the Recovery® Filter System in morbidly obese patients has not been established.  There have been fatal device-related adverse events reported in this population.

[and]

[C]entral venous lines may cause the filters to move or fracture.

On April 19, 2005, prior to formally responding to the FDA's request to add a black box warning, BPV CEO Timothy Ring and C.R. Bard CEO John Weiland received an executive summary reporting that there were at least 34 migrations and 51 fractures associated with Bard IVC Filters.

This same report advised Bard executives that there were then nine deaths, six of which related to morbidly obese patients.  Further, 18 of the 51 fractures resulted in fragments migrating to the heart.

On April 20, 2005, without alerting the FDA to the alarming information Bard executives had the day before, Bard submitted a letter in response to the FDA's request to add this black box warning stating that, "There is currently a statement in the IFU linking all of our complications to death."

On August 29, 2005, the FDA cleared the G2® filter for the same intended uses as the Recovery® filter, except that it was not cleared for retrievable use.[1]  Contrary to the FDA's

---

[1] The FDA did not clear the G2® filter to be used as a retrievable filter until January 15, 2008.

suggestion, no black box warning was added to warn the bariatric patient population of fatalities associated with the use of the filter.[2]

In September of 2005, Bard quietly and belatedly replaced the Recovery® filter on hospital shelves with the G2® filter.  Bard either told doctors or led them to believe that the G2® was a new and improved version of the Recovery® filter with the same option to retrieve the filter after implant.

At the same time Bard was selling the G2® (then a permanent use filter without any retrievability option), Bard was also selling the SNF, which had the same indication for use with nearly zero adverse events.

Bard marketed the G2® filter as having "enhanced fracture resistance," "improved centering," and "increased migration resistance" without any data to back up these representations.  Even if such data existed, Bard witnesses have testified that Bard would not share any such information with doctors if requested.

Moreover, as with its predecessor Recovery® filter, Bard failed to conduct adequate clinical and bench testing to ensure that the G2® filter would perform safely and effectively once implanted in the human body.

The G2® filter's design causes it to be of insufficient integrity and strength to withstand normal stresses within the human body so as to resist fracturing, migrating, and/or tilting, and/or perforating the inferior vena cava.

---

[2] A warning was eventually added to the IFU in October of 2009.

In addition to the same design defects as its predecessor device, the G2® filter suffers from the same manufacturing defects. These manufacturing defects include, but are not limited to, the existence of "draw markings" and circumferential grinding markings on the exterior of the surface of Bard IVC Filters. The presence of these draw markings and/or circumferential grinding markings further compromises the structural integrity of the G2® filter while *in vivo*.

In particular, the G2® filter is prone to fail at or near the location of draw markings/circumferential grinding markings on the struts of the IVC Filters.

Put simply, the G2® filter is not of sufficient strength to withstand normal placement within the human body. The presence of the aforementioned exterior manufacturing defects makes Bard IVC Filters more susceptible to fatigue, failure, and migration.

Similarly, although Bard rounded the chamfer at the edge of the cap of the G2® filter, it continued to fracture at that same location.

Thus, the G2® filter shares similar defects and health risks as the Recovery® filter.

Almost immediately upon the release of the G2® filter, Bard received notice of the same series of adverse events of migration, fracture, tilt, and perforation causing the same type of harm as the Recovery® filter. This time, however, a new and different adverse event emerged: the G2® filter would caudally (moving against blood flow) migrate in the direction toward the groin.

The G2® filter failures were again associated with reports of severe patient injuries such as:

Death;

Hemorrhage;

Cardiac/pericardial tamponade (pressure caused by a collection of blood in the
   area around the heart);

Cardiac arrhythmia and other symptoms similar to myocardial infarction;

Severe and persistent pain; and

Perforations of tissue, vessels and organs.

Bard represents the fracture rate of the G2® filter to be 1.2%. Based upon a review of the data available in the public domain (including the FDA MAUDE database statistics and the published medical literature), this representation does not accurately reflect the true frequency of fractures for the G2® filter.

As with the Recovery® filter, Bard was aware of clinical data showing that the G2® filter was not the substantial equivalent of its predecessor SNF device, requiring immediate recall of the adulterated and misbranded product.

A review of the MAUDE database from the years 2004 through 2008 demonstrates that the Bard IVC Filters (including the G2® Filter) are responsible for the majority of all reported adverse events related to IVC filters.

On December 27, 2005, Bard's Medical Affairs Director sent an email questioning why Bard was even selling the modified version of the Recovery® filter, when Bard's SNF had virtually no complaints associated with it.

This further confirms the misbranded and adulterated nature of the device, requiring corrective action, including recall.

On January 15, 2008, the FDA allowed a retrievable option for the G2® filter, the G2 Express® filter.  The G2 Express® filter (also known as the "G2®X") is identical in design to the G2® filter except that it has a hook at the top of the filters that allows it to be retrieved by snares, as well as Bard's Recovery Cone.

The G2®X filter contained no design modifications or improvements to alleviate the instability, structural integrity, and perforation problems that Bard knew to exist with the G2®X Filter via the 510(k) process.

**ESTOPPEL FROM PLEADING STATUTES OF LIMITATIONS OR REPOSE**

Plaintiff incorporates by reference all prior allegations.

Plaintiff is within the applicable statute of limitations for their claims because Plaintiff (and her healthcare professionals) did not discover, and could not reasonably discover, the defects and unreasonably dangerous condition of her Bard IVC Filter.

Plaintiff's ignorance of the defective and unreasonably dangerous nature of the Bard IVC Filter, and the causal connection between these defects and Plaintiff's injuries and damages, is due in large part to Bard's acts and omissions in fraudulently concealing information from the public and misrepresenting and/or downplaying the serious threat to public safety its products present.

In addition, Bard is estopped from relying on any statutes of limitation or repose by virtue of its unclean hands, acts of fraudulent concealment, affirmative misrepresentations and omissions.

Such conduct includes intentional concealment from Plaintiff, Plaintiff's prescribing health care professionals, and the general consuming public of material information that Bard IVC Filters had not been demonstrated to be safe or effective, and carried with them the risks and dangerous defects described above.

Bard had a duty to disclose the fact that Bard IVC Filters are not safe or effective, not as safe as other filters on the market, defective, and unreasonably dangerous, and that their implantation and use carried with it the serious risk of developing perforation, migration, tilting, and/or fracture.

### **COUNT I: STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

Plaintiffs incorporate by reference all prior allegations.

Prior to, on, and after the date the Bard IVC Filter was implanted in Plaintiff, Bard designed, distributed, manufactured, sold, and marketed Bard IVC Filters for use in the United States.

At all relevant times, Bard designed, distributed, manufactured, marketed, and sold Bard IVC Filters that were unreasonably dangerous, unsafe, and defective in manufacture when they left Bard's possession.

Upon information and belief, Bard IVC Filters contain a manufacturing defect, in that they differed from the manufacturer's design or specifications, or from other typical units of the same product line.

As a direct and proximate cause of Bard's design, manufacture, marketing, and sale of Bard IVC Filters prior to, on, and after the date Plaintiff used the Bard IVC Filter, Plaintiff suffered Injuries and Damages.

**COUNT II: STRICT PRODUCTS LIABILITY – INFORMATION DEFECT**

Plaintiff incorporates by reference all prior allegations.

At all relevant times, Bard engaged in the business of testing, developing, designing, manufacturing, packaging, labeling, marketing and/or promoting, selling and/or distributing Bard IVC Filters and through that conduct has knowingly and intentionally placed Bard IVC Filters into the stream of commerce with full knowledge that they reach consumers such as Plaintiffs who would become implanted with them.

Bard did in fact test, develop, design, manufacture, package, label, market and/or promote, sell and/or distribute Bard IVC Filters to Plaintiffs, Plaintiff's prescribing health care professionals, and the consuming public.  Additionally, Bard expected that the Bard IVC Filters they were selling, distributing, supplying, manufacturing, and/or promoting to reach, and did in fact reach, prescribing health care professionals and consumers, including Plaintiff and Plaintiff's prescribing health care professionals, without any substantial change in the condition of the product from when it was initially distributed by Bard.

The Bard IVC Filters had potential risks and side effects that were known or knowable to Bard by the use of scientific inquiry and information available before, at, and after the manufacture, distribution, and sale of the Bard IVC Filters.

Bard knew or should have known of the defective condition, characteristics, and risks associated with Bard IVC Filters.  These defective conditions included, but were not limited to: (1) Bard IVC Filters posed a significant and higher risk of failure than other similar IVC filters (fracture, migration, tilting, and perforation of the vena cava wall); (2) Bard IVC Filter failures result in serious injuries and death; and (3) certain conditions or post-implant procedures, such as morbid obesity or open abdominal procedures, could affect the safety and integrity of Bard IVC Filters.

Bard IVC Filters were in a defective and unsafe condition that was unreasonably and substantially dangerous to any user or consumer implanted with Bard IVC Filters, such as Plaintiffs, when used in an intended or reasonably foreseeable way.

The warnings and directions Bard provided with Bard IVC Filters failed to adequately warn of the potential risks and side effects of Bard IVC Filters.

These risks were known or were reasonably scientifically knowable to Bard, but not known or recognizable to ordinary consumers, such as Plaintiff, or to Plaintiff's treating doctors.

Bard IVC Filters were expected to and did reach Plaintiff without substantial change in their condition, labeling, or warnings as manufactured, distributed, and sold by Bard.

Additionally, Plaintiff and Plaintiff's physicians used Bard IVC Filters in the manner in which they were intended to be used, making such use reasonably foreseeable to Bard.

As a direct and proximate result of Bard's information defects, lack of sufficient instructions or warnings prior to, on, and after the date Plaintiff used Bard IVC Filters, Plaintiff suffered Injuries and Damages.

### COUNT III: STRICT PRODUCTS LIABILITY – DESIGN DEFECT

Plaintiff incorporates by reference all prior allegations.

At all relevant times, Bard designed, tested, distributed, manufactured, advertised, sold, marketed and otherwise placed into the stream of commerce Bard IVC Filters for use by consumers, such as Plaintiff, in the United States.

Bard IVC Filters were expected to, and did, reach Bard's intended consumers, handlers, and persons coming into contact with the product without substantial change in the condition in which they was researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Bard.

At all times relevant, Bard IVC Filters were manufactured, designed and labeled in an unsafe, defective, and inherently dangerous condition which was dangerous for use by the public in general and Plaintiff in particular.

Bard IVC Filters, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Bard were defective in design and formulation and unreasonably dangerous in that when they left the hands of Bard's manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated

with the use of Bard IVC Filters, and the devices were more dangerous than the ordinary customer would expect.

Physicians implanted Bard IVC Filters as instructed via the Instructions for Use and in a foreseeable manner as normally intended, recommend, promoted, and marketed by Bard.

Plaintiff received and utilized Defendants' IVC Filters in a foreseeable manner as normally intended, recommended, promoted, and marketed by Bard.

At the time Bard placed its defective and unreasonably dangerous Bard IVC Filters into the stream of commerce commercially, technologically, and scientifically feasible alternative designs were attainable and available.

These alternative designs would have prevented the harm resulting in Plaintiff's Injuries and Damages without substantially impairing the reasonably anticipated or intended function of Bard IVC Filters.

As a direct and proximate result of the defective and unreasonably dangerous condition of Bard IVC Filters, Plaintiff suffered Injuries and Damages.

<b><u>COUNT IV: NEGLIGENCE – DESIGN</u></b>

Plaintiff incorporate by reference all prior allegations.

At the time of the design, distribution, manufacture, advertising, sale, and marketing of Bard IVC Filters, and their implantation in Plaintiff, Bard was aware that Bard IVC Filters were designed and manufactured in a manner presenting:

An unreasonable risk of fracture of portions of the filters;

An unreasonable risk of migration of the filters and/or portions of the filters;

An unreasonable risk of filters tilting and/or perforating the vena cava wall; and

Insufficient strength or structural integrity to withstand normal placement

within the human body.

At the time of the design, distribution, manufacture, advertising, sale, and marketing of Bard IVC Filters, and their implantation in Plaintiff, Bard also was aware that Bard IVC Filters:

Would be used without inspection for defects;

Would be used by patients with special medical conditions such as those of the

Plaintiff;

Had previously caused serious bodily injury to its users with special medical

conditions such as those of the Plaintiff;

Had no established efficacy;

Were less efficient than the predicate SNF;

Would be implanted in patients where the risk outweighed any benefit or utility

of the filters;

Contained instructions for use and warnings that were inadequate; and

Required retrieval (as to the Recovery® and G2® filters) by a device that was

not approved or cleared by the FDA.

Bard had a duty to exercise due care and avoid unreasonable risk of harm to others in the design of Bard IVC Filters.

Bard breached these duties by, among other things:

Designing and distributing a product in which it knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

Designing and distributing a product which it knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other IVC filters available for the same purpose;

Failing to perform reasonable pre- and post-market testing of Bard IVC Filters to determine whether or not the products were safe for their intended use;

Failing to use reasonable and prudent care in the design, research, manufacture, and development of Bard IVC Filters so as to avoid the risk of serious harm associated with the use of Bard IVC Filters;

Advertising, marketing, promoting, and selling Bard IVC Filters for uses other than as approved and indicated in the products' labels;

Failing to establish an adequate quality assurance program used in the manufacturing of Bard IVC Filters; and

Failing to perform adequate evaluation and testing of Bard IVC Filters when such evaluation and testing would have revealed the propensity of Bard IVC Filters to cause injuries similar to those that Plaintiffs suffered.

As a direct and proximate result of the above-described negligence in design of Bard IVC Filters, Plaintiff suffered Injuries and Damages.

### COUNT V: NEGLIGENCE – MANUFACTURE

Plaintiff incorporate by reference all prior allegations.

At all relevant times, Bard had a duty to exercise due care in the manufacturing of Bard IVC Filters.

Bard breached this duty by, among other things:

Failing to adopt manufacturing processes that would reduce the foreseeable risk of product failure;

Failing to use reasonable care in manufacturing the product and by producing a product that differed from their design or specifications or from other typical units from the same production line;

Failing to use reasonable and prudent care in the design, research, manufacture, and development of Bard IVC Filters and their manufacturing process so as to avoid the risk of serious harm associated with the use of Bard IVC Filters; and

Failing to establish an adequate quality assurance program used in the manufacturing of the IVC Filters.

As a direct and proximate result of the above-described negligence in manufacture of Bard IVC Filters, Plaintiffs suffered Injuries and Damages.

### COUNT VI: NEGLIGENCE – FAILURE TO RECALL/RETROFIT

Plaintiff incorporates by reference all prior allegations.

At this time, all Bard IVC Filters are misbranded and adulterated by virtue of them failing to be the substantial equivalent of their predecessor device, making them subject to corrective action, including recall, in the interest of patient safety.

Prior to, on, and after the date of Plaintiff's implantation with Bard IVC Filters, and at all relevant times, Bard knew or reasonably should have known that Bard IVC Filters and their warnings were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

Prior to, on, and after the date of Plaintiff's implantation with Bard IVC Filters and at all relevant times thereafter, Bard became aware that the defects of Bard IVC Filters resulted in Bard IVC Filters causing injuries similar to those Plaintiff suffered.

Reasonable manufacturers and distributors under the same or similar circumstances would have recalled or retrofitted Bard IVC Filters, and would thereby have avoided and prevented harm to many patients, including Plaintiff.

In light of this information and Bard's knowledge described above, Bard had a duty to recall and/or retrofit Bard IVC Filters.

Bard breached its duty to recall and/or retrofit Bard IVC Filters.

As a direct and proximate result of Bard's negligent failure to recall or retrofit, Plaintiff suffered Injuries and Damages.

## COUNT VII: NEGLIGENCE – FAILURE TO WARN

Plaintiff incorporates by reference all prior allegations.

At all relevant times, Bard knew or should have known that Bard IVC Filters were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

Such danger included the propensity of Bard IVC Filters to cause injuries and death similar to those suffered by Plaintiffs.

At all relevant times, Bard also knew or reasonably should have known that the users of Bard IVC Filters, including Plaintiff, would not realize or discover on their own the dangers presented by Bard IVC Filters.

Reasonable manufacturers and reasonable distributors, under the same or similar circumstances as those of Bard prior to, on, and after the date of Plaintiff's use of Bard IVC Filters, would have warned of the dangers presented by Bard IVC Filters, or instructed on the safe use of Bard IVC Filters.

Prior to, on, and after the date of Plaintiff's use of the IVC Filters, Bard had a duty to adequately warn of the dangers presented by Bard IVC Filters and/or instruct on the safe use of Bard IVC Filters.

Bard breached these duties by failing to provide adequate warnings to Plaintiff communicating the information and dangers described above and/or providing instruction for safe use of Bard IVC Filters.

As a direct and proximate result of Bard's negligent failure to warn, Plaintiff suffered Injuries and Damages.

## COUNT VIII: NEGLIGENT MISREPRESENTATION

Plaintiff incorporates by reference all prior allegations.

Prior to, on, and after the dates during which Plaintiff was implanted with the IVC Filters, Bard negligently and carelessly represented to Plaintiff, Plaintiffs' treating physicians, and the general public that Bard IVC Filters were safe, fit, and effective for use.

These representations were untrue.

Bard owed a duty in all of its undertakings, including the dissemination of information concerning its IVC filters, to exercise reasonable care to ensure that it did not in those undertakings create unreasonable risks of personal injury to others.

Bard disseminated to health care professionals and consumers through published labels, labeling, marketing materials, and otherwise information concerning the properties and effects of Bard IVC Filters with the intention that health care professionals and consumers would rely upon that information in their decisions concerning whether to prescribe and use Bard IVC Filters.

Bard, as medical device designers, manufacturers, sellers, promoters and/or distributors, knew or should reasonably have known that health care professionals and consumers, in weighing the potential benefits and potential risks of prescribing or using Bard IVC Filters, would rely upon information disseminated and marketed by Bard to them regarding the Bard IVC Filters.

Bard failed to exercise reasonable care to ensure that the information they disseminated to health care professionals and consumers concerning the properties and effects of Bard IVC

Filters was accurate, complete, and not misleading and, as a result, disseminated information to health care professionals and consumers that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to consumers such as Plaintiffs.

Bard, as designers, manufacturers, sellers, promoters, and/or distributors, also knew or reasonably should have known that patients receiving Bard IVC Filters as recommended by health care professionals in reliance upon information disseminated by Bard as the manufacturer/distributor of Bard IVC Filters would be placed in peril of developing the serious, life-threatening, and life-long injuries including, but not limited to, tilting, migration, perforation, fracture, lack of efficacy, and increased risk of the development of blood clots, if the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

Bard had a duty to promptly correct material misstatements it knew others were relying upon in making healthcare decisions.

Bard failed in each of these duties by misrepresenting to Plaintiff and the medical community the safety and efficacy of Bard IVC Filters and failing to correct known misstatements and misrepresentations.

As a direct and proximate result of Bard's negligent misrepresentations, Plaintiff suffered Injuries and Damages.

## COUNT IX: NEGLIGENCE *PER SE*

(Violations of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§1.21, 801, 803, 807, 820)

Plaintiff incorporates by reference all prior allegations.

At all times herein mentioned, Bard was subject to a variety of federal, state, and local laws, rules, regulations and ordinances, including the Federal Food, Drug and Cosmetic Act ("FFDCA") and its applicable regulations, concerning the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning, and post-sale warning and other communications of the risks and dangers of Bard IVC Filters.

By reason of its conduct as alleged herein, Bard violated provisions of statutes and regulations, including but not limited to:

FFDCA, 21 U.S.C. §§331 and 352, by misbranding Bard IVC Filters;

FFDCA, 21 U.S.C. § 321, by making statements and/or representations via word, design, device, or any combination thereof failing to reveal material facts with respect to the consequences that may result from the use of Bard IVC Filters to which the labeling and advertising relates;

21 C.F.R. § 1.21, by misleading its consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of its Bard IVC Filters;

21 C.F.R. § 801, by mislabeling Bard IVC Filters as to safety and effectiveness of its products and by failing to update its label to reflect post-marketing evidence that Bard IVC Filters were associated with an increased risk of injuries due to tilting, fracture, migration and perforation;

21 C.F.R. §§801.109 and 801.4 by learning that Bard IVC Filters were

adulterated and misbranded and failing to correct and recall the devices.

21 C.F.R. § 803, by not maintaining accurate medical device reports regarding

adverse events of tilting, fracture, migration and perforation and/or

misreporting these adverse events maintained via the medical device

reporting system;

21 C.F.R. § 807, by failing to notify the FDA and/or the consuming public

when its Bard IVC Filters were no longer substantially equivalent with

regard to safety and efficacy with regard to post-marketing adverse

events and safety signals;

21 C.F.R. § 820, by failing to maintain adequate quality systems regulation

including, but not limited to, instituting effective corrective and

preventative actions;

21 CFR 201.128, by promoting each of their subject devices off-label and for

conditions, purposes and uses beyond their labeled and intended uses;

and

210 CFR 801.4, by their knowledge of off-label uses of their devices for

unintended and unlabeled  conditions, purposes and uses, and failing as

required to provide adequate labeling which accords with such unlabeled

and unintended uses.

These statutes, rules and regulations, along with those listed in Count XIV, are designed to protect the health, safety, and well-being of consumers like Plaintiff.

Bard's violation of these statutes, rules and regulations, as well as those detailed in Count XIV, constitutes negligence *per se*.

As a direct and proximate result of Bard's negligence *per se*, Plaintiffs suffered Injuries and Damages.

## COUNT X: BREACH OF EXPRESS WARRANTY

Plaintiff incorporates by reference all prior allegations.

Plaintiff, though their medical providers, purchased Bard IVC Filters from Bard.

At all relevant times, Bard was a merchant of goods of the kind including medical devices and vena cava filters (i.e, Bard IVC Filters).

At the time and place of sale, distribution, and supply of Bard IVC Filters to Plaintiff (and to other consumer and the medical community), Bard expressly represented and warranted that Bard IVC Filters were safe; that they were well-tolerated, efficacious, fit for their intended purpose, and of marketable quality; that they did not produce any unwarned-of dangerous side effects; and that they was adequately tested.

At the time of Plaintiff's purchase from Defendants, Bard IVC Filters were not in a merchantable condition, and Bard breached its expressed warranties, in that Bard IVC Filters:

> Were designed in such a manner so as to be prone to an unreasonably high incidence of fracture, perforation of vessels and organs, and/or migration;

Were designed in such a manner so as to result in a unreasonably high

incidence of injury to the vessels and organs of its purchaser;

Were manufactured in such a manner that the exterior surface of the filter was

inadequately, improperly, and inappropriately constituted, causing the

device to weaken and fail;

Were unable to be removed at any time during a person's life;

Were not efficacious in the prevention of pulmonary emboli;

Carried a risk of use outweighed any benefit; and

Were not self-centering.

As a direct and proximate result of Bard's breach of express warranty, Plaintiff suffered

Injuries and Damages.

## COUNT XI: BREACH OF IMPLIED WARRANTY

Plaintiff incorporate by reference all prior allegations.

Bard impliedly warranted that Bard IVC Filters were of merchantable quality and safe

and fit for the use for which Bard intended them, and Plaintiff in fact used them.

Bard breached its implied warranties by:

Failing to provide adequate instruction that a manufacturer exercising

reasonable care would have provided concerning the likelihood that Bard

IVC Filters would cause harm;

Manufacturing and/or selling Bard IVC Filters when those filters did not

conform to representations made by Bard when they left Bard's control;

Manufacturing and/or selling Bard IVC Filters that were more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner;

Manufacturing and/or selling Bard IVC Filters that carried foreseeable risks associated with the Bard IVC Filter design or formulation which exceeded the benefits associated with that design;

Manufacturing and/or selling Bard IVC Filters when they deviated in a material way from the design specifications, formulas, or performance standards or from otherwise identical units manufactured to the same design specifications, formulas, or performance standards; and

Impliedly representing that its filters would be effective in the prevention of pulmonary emboli.

As a direct and proximate result of Bard's breach of its implied warranty, Plaintiff has suffered Injuries and Damages.

<u>**COUNT XII: FRAUDULENT MISREPRESENTATION**</u>

Plaintiff incorporates by reference all prior allegations.

At all times relevant to this cause, and as detailed above, Bard intentionally provided Plaintiff, Plaintiff's physicians, the medical community, and the public at large with false or inaccurate information.  Bard also omitted material information concerning Bard IVC Filters, including, but not limited to, misrepresentations regarding the following topics:

The safety of the Bard IVC Filters;

The efficacy of the Bard IVC Filters;

The rate of failure of the Bard IVC Filters;

The pre-market testing of the Bard IVC Filters;

The approved uses of the Bard IVC Filters; and

The ability to retrieve the device at any time over a person's life.

The information Bard distributed to the public, the medical community, and Plaintiff was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, and instructions for use, as well as through their officers, directors, agents, and representatives.

These materials contained false and misleading material representations, which included: that Bard IVC Filters were safe and fit when used for their intended purpose or in a reasonably foreseeable manner; that they did not pose dangerous health risks in excess of those associated with the use of other similar IVC filters; that any and all side effects were accurately reflected in the warnings; and that they were adequately tested to withstand normal placement within the human body.

Bard made the foregoing misrepresentations knowing that they were false or without reasonable basis.  These materials included instructions for use and a warning document that was included in the package of Bard IVC Filters that were implanted in Plaintiff.

Bard's intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Plaintiff's health care providers; to gain the confidence of the public and the medical community, including Plaintiff's health care

providers; to falsely assure the public and the medical community of the quality of Bard IVC Filters and their fitness for use; and to induce the public and the medical community, including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use Bard IVC Filters, all in reliance on Bard's misrepresentations.

The foregoing representations and omissions by Bard were false.

Bard IVC Filters are not safe, fit, and effective for human use in their intended and reasonably foreseeable manner.

Further, the use of Bard IVC Filters is hazardous to the users' health, and Bard IVC Filters have a serious propensity to cause users to suffer serious injuries, including without limitation the injuries Plaintiff suffered.

Finally, Bard IVC Filters have a statistically significant higher rate of failure and injury than do other comparable IVC filters.

In reliance upon the false and negligent misrepresentations and omissions made by Bard, Plaintiffs and Plaintiff's health care providers were induced to, and did use Bard IVC Filters, thereby causing Plaintiff to sustain severe and permanent personal injuries and death.

Bard knew and had reason to know that Plaintiff, Plaintiff's health care providers, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by Bard, and would not have prescribed and implanted Bard IVC Filters if the true facts regarding Bard IVC Filters had not been concealed and misrepresented by Bard.

Bard had sole access to material facts concerning the defective nature of the products and their propensities to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who were implanted with Bard IVC Filters.

At the time Bard failed to disclose and intentionally misrepresented the foregoing facts, and at the time Plaintiffs used Bard IVC Filters, Plaintiff and Plaintiff's health care providers were unaware of Bard's misrepresentations and omissions.

As a direct and proximate result of Bard's fraudulent misrepresentations, Plaintiff suffered Injuries and Damages.

## COUNT XIII: FRAUDULENT CONCEALMENT

Plaintiff incorporates by reference all prior allegations.

In marketing and selling Bard IVC Filters, Bard concealed material facts from Plaintiff and Plaintiff's healthcare providers.

These concealed material facts include, but are not limited to:

Bard IVC Filters were unsafe and not fit when used for their intended purpose or in a reasonably foreseeable manner;

Bard IVC Filters posed dangerous health risks in excess of those associated with the use of other similar IVC filters;

That there were additional side effects related to implantation and use of Bard IVC Filters that were not accurately and completely reflected in the warnings associated with Bard IVC Filters; and

That Bard IVC Filters were not adequately tested to withstand normal

placement within the human body.

Plaintiff and Plaintiff's healthcare providers were not aware of these and other facts concealed by Bard.

In concealing these and other facts, Bard intended to deceive Plaintiff and Plaintiff's healthcare providers.

Plaintiff and Plaintiff's healthcare providers were ignorant of and could not reasonably discover the facts Bard fraudulently concealed and reasonably and justifiably relied on Bard's representations concerning the supposed safety and efficacy of Bard IVC Filters.

As a direct and proximate result of Defendants' fraudulent concealment of material facts, Plaintiff suffered Injuries and Damages.

## COUNT XIV: VIOLATIONS OF APPLICABLE STATE LAW PROHIBITING CONSUMER FRAUD AND UNFAIR DECEPTIVE TRADE PRACTICES

Plaintiff incorporates by reference all prior allegations.

Bard had a statutory duty to refrain from unfair or deceptive acts or practices in the sale and promotion of Bard IVC Filters.

Bard knowingly, deliberately, willfully and/or wantonly engaged in unfair, unconscionable, deceptive, fraudulent, and misleading acts or practices in violation of all states' consumer protection laws identified below.

Through its false, untrue, and misleading promotion of Bard IVC Filters, Bard induced Plaintiff to purchase and/or pay for the purchase of Bard IVC Filters.

Bard misrepresented the alleged benefits and characteristics of Bard IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Bard IVC Filters; misrepresented the quality and efficacy of Bard IVC Filters as compared to much lower-cost alternatives; misrepresented  and  advertised  that Bard IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Bard IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC filter or method of preventing pulmonary emboli.

Bard's conduct created a likelihood of, and in fact caused, confusion and misunderstanding.

Bard's conduct misled, deceived, and damaged Plaintiff, and Bard's fraudulent, misleading, and deceptive conduct was perpetrated with an intent that Plaintiff relies on said conduct by purchasing and/or paying for purchases of Bard IVC Filters.

Moreover, Bard knowingly took advantage of Plaintiff, who were unable to protect their own interests due to ignorance of the harmful adverse effects of Bard IVC Filters.

Bard's conduct was willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable, and substantially injurious to Plaintiffs and offends the public conscience.

Plaintiff purchased Bard's IVC Filters primarily for personal, family, or household purposes.

As a result of Bard's violative conduct in each of the Plaintiff's respective states, Plaintiff purchased and/or paid for purchases of Bard IVC Filters that were not made for resale.

Bard engaged in unfair competition or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of Ark. Code § 4-88-101, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of Cal. Civ. Code § 1770, *et seq*. (the "Consumer Legal Remedies Act"), and Cal. Bus. & Prof. Code § 17200, *et seq*. and § 17500, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of D.C. Code Ann. § 28-3901, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of 6 Del. Code Ann. § 2513, *et seq*.

Bard engaged in unfair competition or deceptive acts or practices in violation of Fla. Stat. § 501.201, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Haw. Rev. Stat. § 480, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of 815 Illinois L.C.S. §§ 505/2, 510/2, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Ind. Code § 24-5-0.5, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Kan. Stat. Ann. § 50-623, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of KRS § 367.170, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of 5 Me. Rev. Stat. Ann. § 207, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Md. Code, Commercial Law, § 13-301, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A § 1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of M.C.L.A. § 445.901, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of M.S.A. § 325F.69, *et seq.* and M.S.A. § 325D.44, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-5.

Bard engaged in unfair competition or deceptive acts or practices in violation of Missouri V.A.M.S. § 407.020, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Neb. Rev. St. § 59-1602, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Nev. Rev. Stat. §§ 41.600, 598.0903, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of N.J. Stat. Ann. § 56:8-1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of N.C. Gen. Stat. Ann. § 75-1.1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of N.D.C.C. § 51-15-02, *et seq.*

Bard has engaged in unfair competition or deceptive acts or practices in violation of Ohio Rev. Code. Ann. § 1345.01, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of 15 Okla. St. Ann. §§ 751-753, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Oregon Revised Statutes § 646.605, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.1-1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-104, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Utah Code § 13-11-1, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of 9 Vt. Stat. § 2451, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Va. Code § 59.1-200, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of W.Va. Code § 46A-6-101, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Wis. Stat. § 100.18, *et seq.*

Bard engaged in unfair competition or deceptive acts or practices in violation of Wy. Stat. § 40-12-101, *et seq.*

As a direct and proximate result of Bard's violations of these statutes, Plaintiff suffered Injuries and Damages and seek all available damages under each state's law.

## COUNT XV: PUNITIVE DAMAGES ALLEGATIONS

Plaintiff incorporates by reference all prior allegations.

At all times material hereto, Bard knew or should have known that Bard IVC Filters were unreasonably dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

At all times material hereto, Bard attempted to misrepresent and did knowingly misrepresent facts concerning the safety of Bard IVC Filters.

Bard's misrepresentations included knowingly withholding material information from the medical community and the public, including Plaintiff's physicians, concerning the safety of its Bard IVC Filters.

Bard's conduct, alleged throughout this Master Complaint, was willful, wanton, and undertaken with a conscious indifference and disregard to the consequences that consumers of their products faced, including Plaintiff.

At all times material hereto, Bard knew and recklessly disregarded the fact that Bard IVC Filters have an unreasonably high rate of tilt, fracture, migration, and/or perforation.

Notwithstanding the foregoing, Bard continued to market Bard IVC Filters aggressively to consumers, including Plaintiff, without disclosing the aforesaid side effects.

Bard knew of its Bard IVC Filters' lack of warnings regarding the risk of fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell its filters without said warnings so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious disregard of the foreseeable harm caused by Bard IVC Filters.

Bard's intentional and/or reckless failure to disclose information deprived Plaintiff's physicians of necessary information to enable them to weigh the true risks of using Bard IVC Filters against its benefits.

Bard's conduct is reprehensible, evidencing an evil hand guided by an evil mind and was undertaken for pecuniary gain in reckless and conscious disregard for the substantial risk of death and physical injury to consumers, including Plaintiffs and their decedents.

Such conduct justifies an award of punitive or exemplary damages in an amount sufficient to punish Bard's conduct and deter like conduct by Bard and other similarly situated persons and entities in the future.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants for:

Compensatory damages, including without limitation past and future medical expenses; past and future pain and suffering; past and future emotional distress; past and future loss of enjoyment of life; past and future loss of consortium; past and future lost wages and loss of earning capacity;  and other consequential damages as allowed by law;

Punitive damages in an amount sufficient to punish Defendants and deter similar conduct in the future;

Disgorgement of profits;

Restitution;

Statutory damages, where authorized;

Costs of suit;

Reasonable attorneys' fees, where authorized;

Prejudgment interest as allowed by law;

Post-judgment interest at the highest applicable statutory or common law rate from the date of judgment until satisfaction of judgment;

Any other interest recoverable under the law of any action pending in this MDL; and

Such other additional and further relief as Plaintiff may be entitled to in law or in equity.

Dated:  November 20, 2015

Respectfully Submitted,

**HENRY SPIEGEL MILLING LLP**

*/s/  R. Clay Milling*
R. Clay Milling, Esquire
HENRY SPIEGEL MILLING LLP
Atlanta Plaza, Suite 2450
950 E. Paces Ferry Road, N.E.
Atlanta, GA  30326
(404) 832-8000
(404) 832-8050 (facsimile)
rcm@hsm-law.com